IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WESTFIELD NATIONAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 23-cv-16023 |
| FOUNDATION MECHANICS LLC, and KATHRYN GODDU AS TRUSTEE OF THE KATHRYN GODDU TRUST, DATED AUGUST 11, 2000, | ) ) ) ) ) | |
| Defendants. | ) | |

COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, Westfield National Insurance Company, ("Westfield"), by its attorneys, Esp Kreuzer Cores LLP, pursuant to 28 U.S.C. 2201 and 2202, for its Complaint for Declaratory Judgment against Defendants, Foundation Mechanics LLC, ("FM"), and, Kathyren Goddu as Trustee of the Kathryn Goddu Trust, dated August 11, 2000, ("Goddu"), states:

I. THE PARTIES

1. Westfield is an Ohio corporation, with its principal place of business in Westfield Center, Ohio. At all times relevant herein, Westfield was authorized to issue policies of insurance in the State of Illinois and issued a certain commercial general liability policy to its named insured, FM, as detailed herein.

2. Upon information and belief, FM is a business organization that first filed articles of organization with the Illinois Secretary of State on February 13, 2011, and has a principal office located at 3028 W. Roscoe Street, Unit 201, Chicago, Cook County, Illinois 60618. Upon information and belief, Jennifer Kelecius and Jonathan Kelecius own all of the membership shares of FM.

3. Upon information and belief, Jennifer Kelecius and Jonathan Kelecius are residents of Cook County, Illinois.

4. Upon information and belief, Goddu, is an individual who resides, and at all times relevant herein has resided, in Lake County, Illinois.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, Westfield is a citizen of the State of Ohio. Upon information and belief, FM, Jennifer Kelecius, Jonathan Kelecius, and Goddu are all citizens of the State of Illinois.

6. Venue of this action in the Eastern Division of the Northern District of Illinois is proper pursuant to 28 U.S.C. §1391(a), (b), and (c), because Westfield issued the liability policy to FM at 2860 South River Road, Suite 120, Des Plaines, Cook County, Illinois 60618; the alleged location that FM performed under the Goddu/FM written contract is located in Lake County; and the underlying lawsuit is pending in Cook County, Illinois.

## III. THE UNDERLYING INTERVENING COMPLAINT

7. On June 28, 2023, Goddu, by and through her attorneys Gould & Ratner LLP, filed an intervening complaint titled *Kathyren Goddu as Trustee of the Kathryn Goddu Trust, Dated August 11, 2000 v. Foundation Mechanics, LLC*, 2022 L 010935 (Cook County, IL). Westfield filed a copy of the underlying intervening complaint as (Dkt. 1-1).

8. The intervening complaint alleges that Goddu is the owner of the real property located at 975 Lake Road, Lake Forest, Illinois. (Dkt. 1-1 at 2¶2).

9. The intervening complaint alleges that on July 21, 2020, Goddu, through the authorized representative Buhrman Design Group, Inc., contracted for FM to provide labor and

materials related to the construction of a new retaining wall at the site. (Dkt. 1-1 at 3¶9).

10. The intervening complaint alleges that a copy of the contract between Goddu and FM is attached to the intervening complaint as Exhibit A. (Dkt. 1-1 at 3¶9 at sub.ex. A).

11. The alleged Goddu/FM contract reads in part:

> -Furnish all equipment, materials and labor to install the soldier pile retaining wall and deadman system as depicted in the drawings dated 7/14/2020 as prepared by Foundation Mechanics (attached as reference to this proposal) * * *
> -Wall is designed and constructed for future concrete facing. * * *
> -It is understood that global stability of the slope will be mitigated by future revetment design and installation of the bluff.

(Dkt. 1-1 at 3¶9 at sub.ex. A).

12. The alleged drawings consist of 6 pages. (Dkt. 1-1 at 3¶9 at sub.ex. A).

13. Anna M. Dukes, S.E. allegedly stamped the drawings. (Dkt. 1-1 at 3¶9 at sub.ex. A).

14. Page 4 of the alleged drawings contains a section titled "General Notes," that reads in part:

> 1. Retention systems is designed for a uniform surcharge of 100 PSF, special provisions are necessary to accommodate larger loads.
> 2. Check for utility conflicts before installing soldier piles. Drive soldier piles to the depths/bottom elevations shown.
> 3. Sequentially excavate in maximum 5ft lifts and lag to excavation base grade. Use prefabricated lagging panels as ground conditions allow.
> 4. Stop work and notify superintendent if conditions are different from those anticipated.

(Dkt. 1-1 at 3¶9 at sub.ex. A).

15. The intervening complaint alleges that Anna M. Dukes contractually and actually undertook to provide engineering and design services for FM. (Dkt. 1-1 at 3¶11).

16. The intervening complaint alleges that during late 2020, FM constructed the new retaining wall at the site. (Dkt. 1-1 at 3¶14).

17. The intervening complaint alleges that during June of 2021, the retaining wall failed. (Dkt. 1-1 at 3¶15, 4¶19, 17, 33).

18. The intervening complaint alleges that the design services that Anna M. Dukes provided were flawed, resulting in the retaining wall failing. (Dkt. 1-1 at 4¶16).

19. The intervening complaint alleges that the design for the retaining wall was defective in that it "was incapable of resisting the lateral forces resulting in failure." (Dkt. 1-1 at 4¶18).

20. The intervening complaint seeks the costs of additional soil materials for re-bedding of plants; repairing some pool related components; and repairing some irrigation system related components. (Dkt. 1-1 at 4¶19).

21. The intervening complaint alleges that FM has disregarded Goddu's requests for reimbursement of amounts that the intervening plaintiff incurred as a result of FM breach of contract. (Dkt. 1-1 at 4¶20).

IV. THE CONTINENTAL INSURANCE COMPANY PROFESSIONAL LIABILITY POLICY

22. Continental Insurance Company issued a professional liability policy to FM, policy number CPB 591948081, effective March 29, 2021 to March 29, 2022.

23. The declarations page of the professional liability policy states in part that the limit of liability is $2 million per claim.

24. Goddu made a demand for money or services against FM during the policy term of the professional liability policy and alleging that FM's error, omission or other act causing liability in the performance of designing the retaining wall for Goddu by FM or by Anna M. Dukes, a person for whom FM is allegedly liable.

25. FM reported Goddu's demand for money or services to Continental Insurance Company in writing during the policy period of the professional liability policy.

4

V. THE CONTINENTAL INSURANCE COMPANY GENERAL LIABILITY POLICY

26. Continental Insurance Company issued a general liability policy to FM, policy number 7012093185, effective March 29, 2021 to March 29, 2022.

27. The declarations page of the general liability policy states in part that the limit of liability is $1 million each occurrence.

28. On or before June 27, 2023, Continental Insurance Company retained the law firm O'Hagan Meyer, LLC, to defend FM against Goddu's intervening complaint.

29. On July 26, 2023, O'Hagan Meyer, LLC filed the intervening defendant's, FM's, answer to the intervening complaint.

VI. THE WESTFIELD COMMERCIAL PACKAGE POLICY

30. Westfield issued a commercial package policy to FM, policy number TRA 7975013, effective March 29, 2020 to March 29, 2021. Westfield filed a copy of the commercial package policy as (Dkt. 1-2).

31. The Westfield Commercial General Liability ("CGL") Coverage Form has a limit of liability of $1 million each "occurrence" and $2 million in the aggregate. (Dkt. 1-2 at 437).

32. The top of the first page of the Westfield CGL Coverage Form reads in part:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

(Dkt 1-2 at 121).

33. "Coverage A – Bodily Injury and Property Damage Liability" of Section I of the Westfield CGL reads in part:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. **Insuring Agreement**
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" of "property damage" to which this insurance does not apply. ***
>
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>
>       **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"
>
>       **(2)** The "bodily injury" or "property damage" occurs during the policy period; ***

(Dkt. 1-2 at 121).

34. "Coverage A – Bodily Injury and Property Damage Liability" of Section I of the Westfield CGL reads in part:

> 2. **Exclusions**
>
>    This insurance does not apply to:
>
>    a. **Expected Or Intended Injury**
>
>       "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force for the purpose of protecting persons or property.
>
>    b. **Contractual Liability**
>
>       "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reasons of the assumption of

liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract;" and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

**j. Damage To Property**

"Property damage" to:

\* \* \*

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k. Damage To Your Product**

7

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product;"
**(2)** "Your work;" or
**(3)** "Impaired property;"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(Dkt. 1-2 at 122-125).

8

35. "Coverage B – Personal and Advertising Injury Liability" of Section I of the Westfield CGL reads in part:

> **1. Insuring Agreement**
>
> > a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply . . .
> >
> > b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Dkt. 1-2 at 126).

36. Section IV of the Westfield CGL reads in part:

> **4. Other Insurance**
>
> > If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:
> >
> > > **a. Primary insurance**
> > >
> > > This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.
> > >
> > > **b. Excess Insurance**
> > >
> > > **(1)** This insurance is excess over:
> > > **(a)** Any of the other insurance, whether primary, excess, contingent, or on any other basis:
> > >
> > > > **(i)** That is Fire, Extended Coverage, Builder's

>Risk, Installation Risk, or similar coverage for "your work;"
>
>**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or
>
>**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or
>
>**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos," or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury and Property Damage Liability.
>
>**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or products and completed operations for which you have been added as an additional insured.
>
>\* \* \*
>
>**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part. \* \* \*
>
>**c. Method Of Sharing**
>
>If all of the other insurance permits con-tribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its appliable limits of in-surance or none of the loss remains, whichever comes first.
>
>If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of in-surance to the total applicable limits of insurance of all insurers.

(Dkt. 1-2 at 132).

10

37. Section V of the Westfield CGL reads in part:

**SECTION V – DEFINITIONS**

\*   \*   \*

8. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

\*   \*   \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:
    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication of material that violates a person's rights of privacy;

11

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

*  *  *

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

  **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

 **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

 **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. \*\*\*

    \*  \*  \*

**21.** "Your product":

 **a.** Means:

  **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(a)** You;
   **(b)** Others trading under your name; or
   **(c)** A person or organization whose business or assets you have acquired; and

  **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

 **b.** Includes:

  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

  **(2)** The providing of or failure to provide warnings or instructions.

 **c.** Does not include vending machines or other property rented to or

13

> located for the use of others but not sold.
>
> **22.** "Your work":
>
> **a.** Means:
>
> **(1)** Work or operations performed by you or on your behalf; and
>
> **(2)** Materials, parts or equipment furnished in connection with such work or operations.
>
> **b.** Includes:
>
> **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and
>
> **(2)** The providing of or failure to provide warnings or instructions.

(Dkt. 1-2 at 133-136).

38. Endorsement CG 22 79 04 13 of the Westfield policy, titled "Contractors – Professional Liability Exclusion," reads in part:

> EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> The following is added to Paragraph 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I - Coverage B – Personal And Advertising Injury Liability:
>
> 1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:
>
>    a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

14

> b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.
>
> 2. Subject to Paragraph 3. below, professional services include:
>
>    a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and
>
>    b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.
>
> 3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

(Dkt. 1-2 at 165).

## VII. BASIS FOR RELIEF

### NO DUTY TO DEFEND OR INDEMNIFY FM AGAINST THE GOTTU INTERVENING COMPLAINT

39. For one or more of the following reasons, Westfield owes no duty to defend or indemnify FM under the Westfield commercial package policy, which Westfield pleads in the alternative:

   a. General liability coverage involves the risk that the insured will be held liable in tort to a third person for accidentally causing "bodily injury," "property damage," or "personal and advertising injury," happening while the policy is in force;

   b. No factual basis exists to establish an "occurrence" while the Westfield general

15

liability coverage policy was in force;

c. No factual basis exists to establish that while the Westfield general liability policy was in force, a sudden highly dangerous event accidentally caused damage to property beyond the scope of the product or services within the chain of contracts;

d. The gravamen of the intervening complaint is for disappointed commercial expectations in connection with design of the retaining wall;

e. A professional error or omission does not constitute an "occurrence," as that term is defined in a commercial general liability policy;

f. The intervening complaint alleges that the design of the retaining wall did not live up to Goddu's expectations in that it failed of its intended purpose of preventing movement of soil;

g. The costs for repairing damage to the retaining wall and incidental property, including but not limited to reconstructing the retaining wall; cleanup; additional soil materials for re-bedding of plants; repairing some pool related components; and repairing some irrigation system related components constitute the natural and ordinary consequences of defective design of the retaining wall;

h. The costs for repairing damage to the retaining wall and incidental property, including but not limited to reconstructing the retaining wall; cleanup; additional soil materials for re-bedding of plants; repairing some pool related components; and repairing some irrigation system related components constitute solely economic loss rather than tort damages;

i. The Westfield commercial general liability policy was not intended to provide coverage against such professional liability or for disappointed commercial

16

expectations;

j. An express or implied warranty is contractual, does not create tort liability for property damage and, thus, is not a risk that commercial general liability policies are intended to cover;

k. The damages alleged are the rational and probable consequence of a product or services that did not conform with commercial representations, and therefore constitute solely economic loss which does not come within the Insuring Agreement of Coverage A of the Commercial General Liability Coverage Part;

l. The refusal to honor a warranty is an intentional non-accidental act rather than an "occurrence" as the liability policy uses the term "occurrence;"

m. The factual allegations of the claims do not involve "property damage," as that term is used in the Westfield policy;

n. Even if hypothetically a factual basis existed to establish "property damage," such loss was expected and/or intended and, thus, exclusion **a.** would apply to negate any coverage that otherwise would have existed;

o. Even if hypothetically a factual basis existed to establish "property damage," exclusion **b.** for "contractual liability" would apply to negate any coverage that otherwise would have existed;

p. Even if hypothetically a factual basis existed to establish "property damage," exclusion **j(5)** for damage to property on which work was performed directly would apply to negate any coverage that otherwise would have existed;

q. Even if hypothetically a factual basis existed to establish "property damage," exclusion **j(6)** for damage to property that will need to be restored, repaired, or

      replaced because work was incorrectly performed on it would apply to negate any coverage that otherwise would have existed;

r. Even if hypothetically a factual basis existed to establish "property damage," exclusion **k** for damage to work product would apply to negate any coverage that otherwise would have existed;

s. Even if hypothetically a factual basis existed to establish "property damage," exclusion **l** for damage to the work would apply to negate any coverage that otherwise would have existed;

t. Even if hypothetically a factual basis existed to establish "property damage," exclusion **m** for "property damage" to "impaired property" or property that has not yet been physically impaired, would apply to negate any coverage that otherwise would have existed;

u. Even if hypothetically a factual basis existed to establish "property damage," exclusion **n** for recall of products, work, or impaired property would apply to negate any coverage that otherwise would have existed;

v. The damages alleged in the claims constitute solely economic loss which does not come within the Insuring Agreement of Coverage B of the Commercial General Liability Coverage Part;

w. The factual allegations of the claims do not constitute any of the offenses set forth in the definition of "personal and advertising injury," and therefore there is on potential coverage for FM under Coverage B of the Commercial General Liability Coverage Part;

x. FM has not met all of the conditions for coverage under the Umbrella liability

coverage part, where FM has not exhausted all primary coverage;

y. For the same reasons that there is no coverage under the general liability coverage form, no coverage exists under the Umbrella coverage form;

z. Exclusion (s) of the Umbrella Coverage Part bars coverage for "bodily injury" or "property damage" due to rendering of or failure to render any professional service; and

aa. There may be other bases for denying coverage and Westfield reserves the right to plead them in the future.

40. An actual and justiciable controversy exists between the parties hereto and, pursuant to 28 U.S.C. §§ 2201 and 2202, this court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

Wherefore, Plaintiff, Westfield National Insurance Company, prays that this Honorable Court enter a judgment declaring: 1) that Westfield National Insurance Company owes no duty to defend Foundation Mechanics LLC against the *Gottu* intervening complaint under the Westfield commercial package policy; 2) awarding Westfield National Insurance Company its costs incurred; and 3) providing such further relief as the Court deems just.

| | |
|---|---|
| ESP KREUZER CORES LLP<br>400 S. County Farm Road<br>Suite 200<br>Wheaton, Illinois 60187<br>(630) 871-1002; ARDC #6274517; our file 1.10561K<br>jbarger@ekclawfirm.com; lmurphy@ekclawfirm.com | RESPECTFULLY SUBMITTED,<br><br>_____<br>Jeffrey S. Barger<br>Attorney for Westfield Nat. Ins. Co. |